**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**REX MARTINEZ, ESQ.**
Nevada Bar No. 15277
E-mail: rmartinez@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
E-mail: jfoley@hkm.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| THEODORE PENTECOST, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>FRIENDLY FORD, a domestic corporation, DOES I -X; ROE CORPORATIONS I -X.<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT AND JURY DEMAND** |

The Plaintiff THEODORE PENTECOST (**"Mr. Pentecost"** or **"Plaintiff"**) by and through his attorneys, Jenny L. Foley, Ph.D., Esq. and Rex M. Martinez of HKM Employment Attorneys LLP hereby complains and alleges as follows:

**JURISDICTION**

1. This is an action for damages brought by Plaintiff for unlawful workplace discrimination based on sex and for illegal retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*.; for violation of Nevada Revised Statute §613.330 *et seq*.; and for certain claims brought pursuant to the Nevada Revised Statutes as outlined below.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28

U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C. §2000e-5(f) (3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. §1367.

3. Upon information and belief, all material allegations relative to the named defendant contained in this Complaint occurred in the State of Nevada, Clark County. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

4. At all relevant times, Defendant was engaged in interstate commerce and employed 20 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year, and are therefore subject to the provisions of the statutes outlined herein.

**EXHAUSTION OF ADMINISTRATIVE REMEDY**

5. On or about September 12, 2019, Plaintiff initiated the process of filing a Charge of Discrimination against his employer, the Defendant(s) named in this action with the Nevada Equal Rights Commission and Equal Employment Opportunity Commission ("EEOC").

6. On or about October 2, 2020, Plaintiff received his "Notice of Right to Sue" from the EEOC.

7. Less than 90 days have passed since the date of mailing of the "Notice of Right to Sue." This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

8. Prior to filing this action, Plaintiff exhausted his administrative remedy on all claims pled hereunder.

**PARTIES**

9. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

10. Plaintiff is a citizen of the State of Nevada and a resident of Clark County, Nevada.

11. Defendant FRIENDLY FORD. (**"Defendant"**) is, upon information and belief,

a domestic corporation authorized at all relevant times to conduct business in the State of Nevada.

12. Doe Defendants I through X inclusive and Roe Corporation Defendants A through Z inclusive, are unknown at the present time and thus sued by Plaintiff in such fictitious names. Plaintiff alleges that said Defendants are in some manner responsible for the damages sustained by Plaintiff and that said Defendants will be named with peculiarity once their identities are known. At such time, Plaintiff will seek leave of court to sate more fully herein the names and acts of said Defendants.

## **GENERAL ALLEGATIONS**

13. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

14. Plaintiff began working for Defendant in November 2016 as a Sales Manager.

15. Plaintiff was an excellent employee who was qualified for the position and performed his duties satisfactorily.

16. Plaintiff's duties as a Sales Manager included selling cars and processing car purchases as well as training and managing other sales associates to do the same.

17. Plaintiff never had any issues working for Defendant until General Manager Bill Bosnos ("Mr. Bosnos"), for unknown reasons, began a campaign of sexual harassment against Plaintiff.

18. Upon information and belief, Mr. Bosnos was hired as a General Manager in December 2018 and worked closely with Plaintiff.

19. Upon information and belief, on several occasions, Mr. Bosnos would sexually harass Plaintiff by making sexually explicit comments, acting out inappropriate and lewd gestures, and showing pornographic material at work.

20. Mr. Bosnos' harassment would often take the form of ridiculing Plaintiff's affinity for cleanliness.

21. Plaintiff kept a clean and orderly work area, would not share food with others, and, in general, was cautious about spreading germs.

22.     Upon information and belief, Plaintiff's cleanliness was something that everyone knew about Plaintiff and peers would occasionally make light jokes about it.

23.     Upon information and belief, Mr. Bosnos knew of this as well, which is demonstrated by his commitment to harassing Plaintiff over it.

24.     Mr. Bosnos' behavior can only be classified as harassment because it was sexual and pervasive in nature and because Ms. Bosnos was Plaintiff's supervisor.

25.     On multiple occasions, Mr. Bosnos would throw popcorn, other small snacks, or crumbs at Plaintiff and would then ask if Plaintiff was going to eat the dirty food.

26.     Moreover, it was often sexual in nature, as Mr. Bosnos would act out rubbing his penis against the desk or area where Plaintiff was working, which is where Mr. Bosnos was throwing the food.

27.     Mr. Bosnos would ask Plaintiff if he would eat the food that had touched the same place that Mr. Bosnos' penis had touched.

28.     While asking these questions, Mr. Bosnos would often gesture to his penis and/or tapping it with his finger and then tapping his finger against the desk or workspace.

29.     One of many examples of this was on or about May 20, 2019, when Plaintiff was just sitting at his desk completing his work and Mr. Bosnos came up besides his desk and started making sexually explicit comments and gestures.

30.     Mr. Bosnos told Plaintiff to be cautious while eating food at his desk because he already had or was going to rub his penis over the area where Plaintiff ate lunch.

31.     While Mr. Bosnos was close to and hovering over Plaintiff and his desk, Mr. Bosnos began pointing directly at and then tapping his penis with his right index finger.

32.     Mr. Bosnos went from pointing at and tapping his penis with his finger to touching Plaintiff's desk or other belongings with that very same finger, going back and forth from tapping his penis to tapping various spots of Plaintiff's workspace and belongings.

33.     Mr. Bosnos repeated the gesture of tapping his penis and then touching Plaintiff's desk and personal items multiple times during this incident.

34.     While Mr. Bosnos was acting out rubbing his penis on Plaintiff's desk, he

continued making comments that Plaintiff should be careful about eating in the vicinity where Mr. Bosnos had rubbed his penis.

35. Upon information and belief, other managers were present during this incident and witnessed Mr. Bosnos make these inappropriate gestures and comments.

36. Furthermore, upon information and belief, this was a common sexual gesture that Mr. Bosnos made and other employees had seen Mr. Bosnos perform these acts on multiple occasions.

37. During this incident, Plaintiff did not directly engage with Mr. Bosnos' behavior, but rather Plaintiff shook his head in disapproval and ignored Mr. Bosnos as best as he could.

38. At this point, Plaintiff had become familiar with Mr. Bosnos' harassment and knew that engaging Mr. Bosnos would only further the harassment, even if the engagement was in protest for Mr. Bosnos to stop.

39. The May 20, 2019, incident was not isolated as Mr. Bosnos would constantly make comments about rubbing his penis on Plaintiff's desk or work area and/or act out the provocative gestures of that very act.

40. Upon information and belief, these comments and/or lewd gestures aimed at Plaintiff would happen on a daily basis.

41. Plaintiff did not find this humorous, professional, or appropriate.

42. On or about May 30, 2019, Mr. Bosnos continued his campaign of sexual harassment by trying to show Plaintiff pornographic images on his phone.

43. Plaintiff clearly stated that he did not want to see the pornographic pictures, but Mr. Bosnos showed him the pornographic imagine against his protest.

44. Once Mr. Bosnos showed Plaintiff the pictures, Plaintiff stated that he was not interested in such a thing at work.

45. Upon information and belief, another Sales Manager, Taylor Warf, witnessed Mr. Bosnos force Plaintiff to look at the pornographic images after Mr. Bosnos had shown him the same imagines.

46. On May 31, 2019, Plaintiff reported this harassment to Steve Crevling, Plaintiff's supervisor, who said he would look into the matter and told Plaintiff that "It'll be alright."

47. Although this vague statement made it sound like management was going to address Mr. Bosnos' behavior, Mr. Bosnos' behavior was never addressed, and, upon information and belief, Mr. Bosnos never faced any repercussions for his behavior.

48. Moreover, Plaintiff reported the constant harassment and retaliation to Mr. Crevling.

49. However, it became clear to Plaintiff that both Mr. Crevling and Human Resources were not going address Mr. Bosnos' behavior, and as such, they only acquiesced to Mr. Bosnos' harassment and retaliation.

50. Plaintiff was terminated by Mr. Bosnos only a few days after reporting Mr. Bosnos' sexual harassment.

51. As explained above, on Thursday May 30, Mr. Bosnos showed Plaintiff a pornographic imagine against his consent, on Friday May 31, Plaintiff reported the incident to Mr. Crevling, and on the very next Monday, June 3, Mr. Bosnos terminated Plaintiff.

52. Plaintiff was supposedly terminated from his position because other salespersons found Plaintiff to be mean in his professional feedback.

53. Plaintiff quizzically inquired whether he was being fired because other employees did not like him and asked for further explanation.

54. Mr. Bosnos affirmed his position, but only provided one example of a salesperson being displeased with Plaintiff.

55. Mr. Bosnos briefly explained a singular incident where Plaintiff had explained to a subordinate that a form needed to sign in a particular place or the processing would not go through and the manager, Plaintiff, would be responsible for the costs.

56. This fabricated example was the only specific that Mr. Bosnos supplied for the termination of Plaintiff.

57. No one had ever complained to Plaintiff that anyone had disliked him,

salesperson or otherwise.

58. The very first time Plaintiff learned of this possibility was during his termination.

59. Plaintiff was one of the top producing Sales Managers and was under the impression that he had an excellent relationship with the salespeople.

60. Plaintiff never had any disciplinary actions taken against him during his employment.

61. Furthermore, during Plaintiff's termination, Mr. Bosnos was the only decision maker as Mr. Crevling did not say anything, nor was any other perspective or opinion brought up other than Mr. Bosnos' opinion, despite Plaintiff's complaints to management.

62. Upon information and belief, Plaintiff received a call from Mr. Crevling the day after Plaintiff was terminated where Mr. Crevling apologized for the wrongful termination.

63. Upon information and belief, Mr. Crevling told Plaintiff that Mr. Bosnos, on or about May 31, 2019, said he was going to immediately fire Plaintiff.

64. However, upon information and belief, Mr. Crevling stated that he did not believe that Mr. Bosnos was going to proceed with termination.

65. Nevertheless, Plaintiff was terminated as soon as Mr. Bosnos worked at the same day as Plaintiff.

66. Upon information and belief, Plaintiff in his nearly three years while working for Defendant never received any training on sexual harassment, discrimination, or retaliation.

67. Upon information and belief, Plaintiff nor any of his coworkers, including management, received any training on sexual harassment, discrimination, and retaliation.

68. Upon information and belief, Plaintiff was never instructed or provided any information on the policies and procedures for reporting sexual harassment and retaliation.

69. Furthermore, upon information and belief, Mr. Bosnos was previously terminated for his mishandling and/or perpetuation of sexual harassment at his previous place of employment.

70. Upon information and belief, as with most career fields, a person's reputation

1  follows them from one position to the next, which was the case with Mr. Bosnos.

2  　　　　71.　　Upon information and belief, Mr. Bosnos had been fired from his last position
3  for failing to address sexual harassment.

4  　　　　72.　　Upon information and belief, Mr. Bosnos had been demoted, transferred, and
5  then ultimately terminated from his previous position at a car dealership because of his
6  indifference and/or inability to address sexual harassment under his management.

7  　　　　73.　　Upon information and belief, several other employees not only knew this
8  information about Mr. Bosnos but were also surprised that Mr. Bosnos would be hired because
9  of this very information.

10 　　　　74.　　Upon information and belief, Plaintiff was the only person who had reported Mr.
11 Bosnos for his sexual harassment.

**FIRST CAUSE OF ACTION**

**(Sex Discrimination (Sexual Harassment) in Violation of Title VII and NRS 613.330)**

14 　　　　75.　　Plaintiff incorporates all of the allegations in the preceding paragraphs as though
15 fully set forth herein.

16 　　　　76.　　During the course of his employment, Plaintiff was subject to an unwelcome
17 vicious, extreme, outrageous, pervasive and unrelenting campaign of sexual harassment and
18 gender discrimination.

19 　　　　77.　　Mr. Bosnos continuously sexually harassed Plaintiff by frequently making
20 sexual comments and sexual gestures aimed at Plaintiff.

21 　　　　78.　　Mr. Bosnos ignored Plaintiff's constant protests and continued to threaten or
22 actually rub his genitals against Plaintiffs desk and personal belongings.

23 　　　　79.　　Mr. Bosnos also made Plaintiff view pornographic imagines at work against his
24 will.

25 　　　　80.　　Plaintiff reported this ongoing harassment to Defendant, but they did nothing.

26 　　　　81.　　Thereby, Defendant affirmed, ratified and acquiesced in the campaign of sexual
27 harassment and hostile working environment.

28 　　　　82.　　The Defendant's behavior violated 42 U.S.C. § 2000e-2(a) by discriminating

against Plaintiff because of his sex, male.

83. Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for back pay, front pay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

84. Because Defendant is guilty of oppression, fraud or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way of punishment.

85. Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred as a result of these violations of Title VII and therefore, he is entitled to recover reasonable attorney's fees against Defendants pursuant to 42 U.S.C. §2000e-5(k).

## SECOND CAUSE OF ACTION

**(Retaliation under Federal Law, 42 U.S.C. § 2000e-3 and NRS 613.340)**

86. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

87. In violation of 42 U.S.C § 200e-3, Defendant retaliated against Plaintiff after he complained of acts which he reasonably believed were discriminatory.

88. Plaintiff reported the sexual harassment on May 31, 2019, and was fired a few days after, as soon as Mr. Bosnos worked at the same shift as Plaintiff.

89. Defendant turned a blind eye to Ms. Bosnos' actions and allowed him to carry out his retaliation again Plaintiff by firing him.

90. Defendant knew of Mr. Bosnos' intention to terminate Plaintiff, and yet did nothing to prevent his retaliatory actions.

91. Plaintiff had worked for Defendant nearly three years with zero issues and no complaints against him, but he was terminated within two weeks after reporting Mr. Bosnos' sexual harassment.

92. Plaintiff was terminated without having any disciplinary actions taken against him and was only provided a fabricated justification.

93. The examples above also constitute retaliatory harassment and the creation of an illegally hostile environment.

94. Plaintiff may be unaware of additional detrimental acts constituting retaliation in that it harmed him in the workplace.

95. The actions and conduct by Defendant constitute illegal retaliation, prohibited by federal statutes.

96. Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for back pay, front pay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

97. Because Defendant is guilty of oppression, fraud or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way of punishment.

98. Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred when Defendant violated Title VII, and therefore, he is entitled to recover reasonable attorney's fees against Defendant pursuant to Title VII.

### THIRD CAUSE OF ACTION

**(Intentional/Negligent Infliction of Emotional Distress)**

99. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

100. Defendant's conduct toward Plaintiff was extreme and outrageous and caused significant emotional harm, headaches, sleeplessness and various physical and mental distress.

101. Defendants' conduct was extreme, outrageous, and undertaken with either intent or, reckless disregard for causing Plaintiff emotional distress.

102. Defendants had a duty to refrain from engaging in the hostile and retaliatory acts as described above.

103. Defendants breached that duty.

104. Defendants intentional or negligent conduct was the legal, actual, proximate

cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

105. Defendants must pay damages in an amount to be determined at trial but exceeding $25,000f for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life because they engaged in illegal actions.

106. Because Defendants are guilty of oppression, fraud or malice, express or implied, Defendants must pay Plaintiff an additional amount for the sake of example and by way of punishment.

107. Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred as a result of these violations and therefore, he is entitled to recover reasonable attorney's fees against Defendants.

## FOURTH CAUSE OF ACTION

### (Negligent Hiring/Retention)

108. Plaintiffs incorporate all the allegations in the preceding paragraphs as though fully set forth herein.

109. Defendant failed to properly train Mr. Bosnos in sexual harassment.

110. Defendants knew or should have known of its employee's proclivities for improper, unreasonable, outrageous, harassing and retaliatory actions, particularly Mr. Bosnos' prior termination for alleged failure for handle sexual harassment, such that an exercise of reasonable care would have stopped and or prevented such conduct.

111. Defendants' failure to supervise Mr. Bosnos and/or other employees and address this conduct in an appropriate way caused injury to Plaintiffs, including but not limited to, the loss of their livelihood and other employment-related benefits.

112. Defendants must pay damages in an amount to be determined at trial, but exceeding $25,000 for back pay, front pay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life because of Defendants' illegal actions.

113. Because Defendants are guilty of oppression, fraud or malice, express or

implied, Defendants must pay Plaintiff an additional amount for the sake of example and by way of punishment.

114.   Plaintiffs have had to obtain the services of an attorney to protect their rights and secure compensation for the damages incurred as a result of these violations and therefore, they are entitled to recover reasonable attorney's fees against Defendants.

**WHEREFORE**, Plaintiff prays this court for:

a.  A jury trial on all appropriate claims;

and to enter judgment in favor of the Plaintiff by:

b.  Awarding Plaintiff an amount sufficient to fully compensate him (including tax consequences) for all economic losses of any kind, and otherwise make him whole in accordance with Nevada law;

e.  An award of compensatory and punitive damages to be determined at trial;

f.  An award of attorney's fees and costs; and

g.  Any other relief the court deems just and proper.

Dated this 28th day of December, 2020.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS, LLP**

By: /s/ *Jenny L. Foley*
JENNY L. FOLEY, PHD., ESQ.
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
REX MARTINEZ, ESQ.
Nevada Bar No. 15277
E-mail: rmartinez@hkm.com
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
*Attorney for Plaintiff*